# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA STEDMAN, an individual,<br><br>                    Plaintiff,<br><br>v.<br><br>McADAM'S FISH, LLC, in personam; the S/V CHARLOTTE M, Official Number U629672, her engines, machinery, appurtenances and cargo, in rem; and CHARCA FISH II, LLC, in personam,<br><br>                    Defendants. | Case No.: 3:18-cv-00130-AJB-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 80)** |

      Defendants McADAM'S FISH, LLC, S/V CHARLOTTE M, and CHARCA FISH II, LLC move for summary judgment under Rule 56. (Doc. No. 80.) Defendants claim plaintiff Joshua Stedman committed acts which subject him to termination via the parties' employment agreement. (*Id.*) Furthermore, Defendants claim Stedman was fully compensated pursuant to the parties' agreement and thus, there are no genuine issues of material fact. (*Id.*) Stedman opposes Defendants' motion and claims he was not discharged for just cause because he denies smoking marijuana on the S/V Charlotte M. (Doc. No. 81 at 3.) Additionally, Stedman argues the "$1,500 payment by [Defendants] was reimbursement for tools and personal gear left aboard the F/V Charlotte M. . . ." (*Id.* at 3.) In Defendants' reply, they assert Stedman agreed to abide by the terms of the parties' contract and was discharged accordingly. (Doc. No. 84 at 2.) "Plaintiff went to the wrong

1

island. Plaintiff was unable to operate the engines or command the crew. Plaintiff was unable to navigate the vessel through normal weather patterns during the first two weeks of the season. Plaintiff used marijuana onboard the *Charlotte M* during his short command, in violation of the contract. . . ." (*Id.* at 2, 3.) For the reasons set forth below, this Court **GRANTS IN PART AND DENIES IN PART** defendants' motion for summary judgment. (Doc. No. 80).

## I. BACKGROUND

Defendants and Stedman entered into an Independent Contractor Agreement ("Agreement") in October 2016. (Doc. No. 80-4, McAdam Decl. ¶ 1(d).) According to the Agreement, Stedman was hired for the purpose of commercial fishing. (*Id.* ¶ 1(d)(i).) As part of his duties, Stedman was to navigate the *Charlotte M* from Washington to the American Samoa. (*Id.*) Soon after the *Charlotte M* set sail, Defendants lost communication with Stedman for eleven days. (*Id.* ¶ 1(d)(ii).) Defendants claim they used a "Vessel Monitoring System" to track Stedman while he was on route. (*Id.*) As a result, Defendants noticed Stedman "engaged in several irregular course changes, and in fact changed [the *Charlotte M's*] course for Hawaii, instead of American Samoa to which [it] was originally bound." (*Id.*) Even more, Defendants allege Stedman's use of marijuana while on board the *Charlotte M* catalyzed their decision to terminate his employment. (*Id.* ¶ 1(d)(iii); Doc. No. 80-4, Taharia Decl. ¶ 1(d).) Corroborated with the lack of communication, Defendants saw fit to terminate Stedman on November 24, 2016. (Doc. No. 80-4, McAdam Decl. ¶ 1(d)(3).)

After the termination, Stedman asserts Defendants paid him $1,500 to compensate him for tools and other property left onboard the *Charlotte M*. (Doc. No. 81-1, Stedman Decl. ¶ 2.) Despite Defendants' use of the Vessel Monitoring System to track the course of the *Charlotte M*, Stedman asserts he led the vessel to Hawaii because "all the existing fuel filters on board had been fouled and [he] needed more to continue the voyage." (*Id.* at ¶ 4.) Moreover, Stedman claims he never used marijuana while acting as captain of the *Charlotte M*. (*Id.* ¶ 5.)

Stedman brought this suit to retrieve *quantum meruit* and unpaid wages he earned as a Seaman. (Doc. No. 1.) Defendants contend Stedman had already been compensated for his services, and counterclaimed against Stedman for breach of contract and willful neglect of duty. (Doc. No. 54.) Defendants bring this motion on the grounds that Stedman has already been compensated fully according to the parties' Agreement, and thus there are no genuine issues of material fact as to his claim for unpaid wages. (Doc. No. 80-1 at 9.)

## II.     LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the nonmoving party would bear the burden of proof at trial, the moving party may satisfy its burden on summary judgment by simply pointing out to the Court an absence of evidence from the nonmoving party. *Miller*, 454 F.3d at 987. "The moving party need not disprove the other party's case." *Id*.

Once the movant has made that showing, the burden shifts to the opposing party to produce "evidence that is significantly probative or more than 'merely colorable' that a genuine issue of material fact exists for trial." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *FTC v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001)); *see also Miller*, 454 F.3d at 988 ("[T]he nonmoving party must come forward with more than 'the mere existence of a scintilla of evidence.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court must review the record as a whole and draw all reasonable inferences in favor of the nonmoving party. *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 736, 738 (9th Cir. 2000). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.*; *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). "Thus, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Miller*, 454 F.3d at 988 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

Defendants' argument is three-fold. First, they assert both parties agreed to the terms of the Agreement, which provided for the causes for termination. (Doc. No. 80-1 at 7.) Next, Defendants contend Stedman "committed acts proscribed by the agreement." (*Id.* at 8.) Finally, Defendants claim Stedman has been fully compensated per the terms of the Agreement, and thus Stedman's claim for unpaid wages should not stand. (*Id.* at 9.)

**A. Cause for Termination in Employment Contract**

As mentioned herein, the parties entered into an Agreement in October 2016. (Doc. No. 80-4, McAdam Decl. ¶ 1(d).) The Court finds the following provisions in the Agreement most relevant to the parties' dispute over whether wages were duly paid:

> 2.1 <u>Share of Gross Stock.</u> As compensation for Captain's provision of services under this agreement, Company shall pay Captain an amount equal to <u>sixteen percent (16%)</u> of the net proceeds from the sale of the Vessel's gross stock (based on cash actually received by Company for fish sold) for the applicable Season (the "Share"), after deduction of the Vessel's Expenses for the applicable Season, as set forth below, and after deduction of any draws taken by Captain or withholdings authorized by Captain against Captain's Share. For purposes of this agreement, the term "Expenses" shall mean expenses actually incurred by Company in connection with the ownership and operation of the Vessel for the applicable Season which are usually and customarily deducted and may lawfully be deducted from a share of compensation, including, without limitation, fuel/lube, food, salt, bait, and fishing gear. Captain's Share shall constitute Captain's sole compensation for Captain's provision of services under this agreement, including, without limitation, all

work performed by Captain to make the Vessel ready for sea, to repaid the Vessel and to take the Vessel out of service. Captain understands and agrees Captain will not receive any extra compensation for services if the Vessel fails to complete her Season for any reason.

7.2 <u>Termination by Company.</u> Company shall have the right to terminate this agreement, effective immediately upon written notice to Captain (except in the case of death, in which case this agreement shall terminate automatically on the date of the Crew Member's death), upon the first to occur of any of the following events:

> (c) Captain's engagement in dishonest or fraudulent conduct or behavior or otherwise acting in a manner inimical to the best interests of Company;
> (e) Captain's willful breach of this agreement or habitual neglect in the performance of Captain's obligations under this agreement;
> (g) inefficient or dangerous performance of Captain's duties under this agreement;
> (i) use or possession of non-prescription drugs or alcohol aboard the Vessel or any intoxication or impairment due to drugs or alcohol at any time while on the Vessel or in the service of the Vessel"

7.3 <u>Effect of Termination.</u> If this agreement is terminated mid-Season, Captain's Share shall be reduced by a percentage equal to the percentage of the Season remaining as of the date of termination, plus all expenses incurred by Company to recruit and hire a new captain to replace Captain. Captain shall remove all of Captain's personal clothing, equipment and property upon termination of Captain's engagement. In addition, Captain shall be obligated to pay Fifth Dollars ($50) room and board to Company for each day Captain is on the Vessel after termination of Captain's employment until the Vessel arrives in port.

Aside from the provisions above, the Court finds there are no other provisions in the Agreement which address the issues of termination and compensation.

Stedman, in his opposition papers, briefly raises an issue regarding his discharge. (Doc. No. 81 at 3.) However, his complaint only addresses the issue of unpaid wages. (Doc. No. 1 ¶ 12.) Although Stedman attempts to raise a wrongful discharge issue in his

opposition, he also concedes "[t]he issue of wrongful discharge is not presently before the Court." (Doc. No. 81 at 4.) Stedman claims the issue of wrongful discharge "will be raised by the plaintiff in later proceedings." (*Id.*) However, it is well settled that a plaintiff cannot raise a new theory in opposition to a summary judgment motion. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291–92 (9th Cir. 2000). Accordingly, the Court will not entertain any issues that have not yet been pled by the parties and finds Stedman's claim of wrongful termination is moot. The Court, ultimately, agrees with Defendants that both parties agreed to the express terms of the Agreement, as demonstrated by the parties' signatures on the Agreement. (Doc. No. 80-4 at 12.)

### B. Stedman's Compensation per the Employment Contract

Defendants next argue Stedman was fully compensated per the parties' Agreement. (Doc. No. 80-1 at 9.) In Stedman's opposition to Defendants' motion, he claims to be "entitled to quantum meruit compensation for the preseason labor he performed in anticipation of earning proceeds from the tuna season." (Doc. No. 81 at 4.)

"[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where. . . express binding agreements exist and define the parties' rights." *Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1172 (9th Cir. 2001) (quoting *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001); *accord Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1420 (supporting the notion that courts may not, when an express contract provides for the rights of the parties, "substitute. . .[its] own concepts of fairness regarding the subject in place of the parties' own contract.")).

The parties do not dispute they entered into an Agreement. The Agreement states Defendants shall pay Stedman "an amount equal to sixteen (16%) of the net proceeds from the sale of the Vessel's gross stock." (Doc. No. 80-4 at 5.) Moreover, the Agreement states "[e]xpenses for the applicable Season" will be deducted from Stedman's pay. (*Id.*) The Agreement asserts Stedman's share "shall constitute [Stedman's] sole compensation for [Stedman's] provision of services under [the] agreement." (*Id.*) Finally, the Agreement

6

3:18-cv-00130-AJB-AGS

opposition, he also concedes "[t]he issue of wrongful discharge is not presently before the Court." (Doc. No. 81 at 4.) Stedman claims the issue of wrongful discharge "will be raised by the plaintiff in later proceedings." (*Id.*) However, it is well settled that a plaintiff cannot raise a new theory in opposition to a summary judgment motion. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291–92 (9th Cir. 2000). Accordingly, the Court will not entertain any issues that have not yet been pled by the parties and finds Stedman's claim of wrongful termination is moot. The Court, ultimately, agrees with Defendants that both parties agreed to the express terms of the Agreement, as demonstrated by the parties' signatures on the Agreement. (Doc. No. 80-4 at 12.)

### B. Stedman's Compensation per the Employment Contract

Defendants next argue Stedman was fully compensated per the parties' Agreement. (Doc. No. 80-1 at 9.) In Stedman's opposition to Defendants' motion, he claims to be "entitled to quantum meruit compensation for the preseason labor he performed in anticipation of earning proceeds from the tuna season." (Doc. No. 81 at 4.)

"[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where. . . express binding agreements exist and define the parties' rights." *Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1172 (9th Cir. 2001) (quoting *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001); *accord Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1420 (supporting the notion that courts may not, when an express contract provides for the rights of the parties, "substitute. . .[its] own concepts of fairness regarding the subject in place of the parties' own contract.")).

The parties do not dispute they entered into an Agreement. The Agreement states Defendants shall pay Stedman "an amount equal to sixteen (16%) of the net proceeds from the sale of the Vessel's gross stock." (Doc. No. 80-4 at 5.) Moreover, the Agreement states "[e]xpenses for the applicable Season" will be deducted from Stedman's pay. (*Id.*) The Agreement asserts Stedman's share "shall constitute [Stedman's] sole compensation for [Stedman's] provision of services under [the] agreement." (*Id.*) Finally, the Agreement

6
3:18-cv-00130-AJB-AGS

expressly states "[Stedman] understands and agrees [Stedman] will not receive any extra compensation for services if the Vessel fails to complete her Season for any reason." (*Id.*) Thus, the Court finds any discussion of quantum meruit compensation is unwarranted here, where the Agreement controls.

In Defendants' motion, they allege "[Stedman] has been fully compensated by Defendants under the terms of the Agreement." (Doc. No. 80-1 at 9.) In Stedman's opposition, he claims "[t]he $1,500 payment by Rob McAdam was reimbursement for tools and personal gear left aboard the F/V Charlotte M." (Doc. No. 81 at 2.) However, neither party has provided the Court with conclusive evidence supporting their respective positions. For the purpose of argument, the parties' Agreement does state Stedman would be compensated "for any *work* performed by [Stedman] to make the [*Charlotte M*] ready for sea, to repair the [*Charlotte M*] and to take the [*Charlotte M*] out of service." (Doc. No. 80-4 at 5 (emphasis added).) This provision gives Stedman three additional avenues in which he could be further compensated. However, Stedman has not provided the Court with any evidence that would bolster his claim to more than the $1,500 he has already been paid. Moreover, Stedman may argue he spent $600 on frozen bait in preparation for the voyage. (Doc. No. 80-4 at 25.) The above provision, however, would merely compensate Stedman for any labor he performed, not for the tangible items he brought onto the *Charlotte M*. Stedman has not provided the Court with evidence that the frozen bait he brought on board warrants a reimbursement. However, Stedman's lack of evidence is not entirely dispositive of his claim for unpaid wages.

As to whether the $1,500 payment fully compensates Stedman, Defendants have provided the Court with evidence of the *Charlotte M*'s 2017 net profits. (Doc. No. 80-4 at 33.) Defendants yielded a net profit of $96,248.12 during this time. (*Id.*) The parties dispute whether Stedman served as Captain of the Charlotte M for two or five weeks—which is determinate because Stedman's compensation would yield strikingly different amounts. (Doc. Nos. 80-1 at 3; 81 at 2.) However, the Court interprets the parties' Agreement as being "effective as of October 21, 2016" and finds Stedman was employed with Defendants

7

3:18-cv-00130-AJB-AGS

until he was terminated on November 24, 2016. (Doc. No. 80-4 at 5; 80-4, McAdam Decl. ¶ 1(d)(3).) Thus, the Court finds Stedman served as captain of the *Charlotte M* for five weeks.

For the purpose of argument, Stedman would have made approximately $615.99 if he served as Captain for two weeks.[1] At five weeks, Stedman would have made approximately $1,480.84.[2] The Court reached these amounts based on the parties' Agreement, which purports to pay Stedman "an amount equal to sixteen (16%) of the net proceeds." (Doc. No. 80-4 at 5.) Defendants paid Stedman $1,500 as well as $287 air fare from Hawaii to Washington. (Doc. Nos. 80-1 at 9; 81 at 2.) Although Defendants paid for Stedman's air fare back home, which would arguably mean Stedman was given more than $1,500, the Court is reluctant to make this determination. Furthermore, there is still a dispute as to whether the $1,500 payment was a reimbursement for the tools Stedman left on board or compensation for his employment. During the parties' hearing on this motion, Defendants claimed that in addition to the $1,500 wire transfer, they also paid Stedman $1,500 in cash on the day of his termination. (Doc. No. 100, Oct. 19, 2018 motion hearing.) However, the cash payment is neither asserted in the parties' pleadings, nor substantiated by any evidence. Stedman denies he received a $1,500 cash payment when he was terminated. The Court finds there is a genuine issue of material fact as to Stedman's compensation. Thus, the Court **DENIES** granting summary judgment regarding compensation under the parties' Agreement.

---

[1] Stedman's sixteen percent (16%) share of Defendants' $96,248.12 profit for the 2017 season, reduced by approximately 96% (fifty (50) out of fifty-two (52) weeks remaining in the season) "equal to the percentage of the Season remaining as of the date of termination" for two (2) weeks of employment.

[2] Stedman's sixteen percent (16%) share of Defendants' $96,248.12 profit for the 2017 season, reduced by approximately 90% (forty-seven (47) out of fifty-two (52) weeks remaining in season) "equal to the percentage of the Season remaining as of the date of termination" for five (5) weeks of employment.

Finally, Defendants seek summary judgment on Stedman's claim for quantum meruit wages. Stedman uses the case of *TCW Special Credits, Inc. v. F/V Kassandra Z*, No. 092-96, 1999 WL 34789254 (Am. Samoa Oct. 20, 1999) to support his claim to quantum meruit wages. However, the Court agrees with Defendants that Stedman's use of this case is misplaced. The parties in *TCW Special Credits* received quantum meruit wages because they did not have an express fishing agreement providing for a method of compensation. (*Id.*) Here, Defendants and Stedman signed an Agreement expressly stating the terms of compensation. Thus, Stedman is not entitled to quantum meruit wages because the parties have "an express contract which provides for the rights of the parties." *Hedging Concepts, Inc.*, 41 Cal. App. 4th at 1420. The Court finds Stedman is not entitled to quantum meruit wages. Thus, the Court **GRANTS** summary judgment regarding quantum meruit compensation.

## IV. CONCLUSION

As to whether Stedman was fully compensated, defendants assert they gave him two $1,500 payments—a wire transfer and a cash payment—one for tools and one for wages. However, Stedman claims he only received the wire transfer. Thus, on this issue, a genuine issue of material fact exists and the Court cannot presently determine whether Stedman was fully compensated under the parties' Agreement. However, the Court does find that Stedman is not entitled to quantum meruit wages. Thus, the Court **DENIES** in part and **GRANTS** in part Defendants' motion for summary judgment. (Doc. No. 80.)

**IT IS SO ORDERED.**

Dated: October 24, 2018

Hon. Anthony J. Battaglia
United States District Judge